[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
ORDERS ON PENDING MOTIONS
This case is an action for dissolution of a marriage in which the main issue in dispute is custody and visitation of the minor child, Eric, currently seven years old, who was born on September 23, 1992. The case has been referred to the regional family trial docket and assigned for special master's mediation in December; the regional family trial judge has informed the undersigned judge that she anticipates beginning trial of this case immediately after the beginning of the new year.
The court has pending before it a number of motions:
 • defendant's motion for contempt dated September 30, 1999, based on his claim that plaintiff has not maintained the joint marital residence in a clean and dust-free condition in violation of previous court orders and as necessary, defendant maintains, for the health and well-being of the minor child, who, both parties agree, has an asthmatic condition;
 • defendant's motion for return of personal property, dated September 30, 1999, based on his claim — admitted by plaintiff, that on June 28, 1999, plaintiff took various personal and/or privileged documents from a locked desk belonging to defendant in the marital residence. CT Page 15031
 • defendant's motion for counseling of the minor of the minor child, dated September 30, 1999;
 • plaintiff's motion for exclusive use of the marital premises pendite lite, dated October 8, 1999; and
 • minor child's motion for order dated September 16, 1999, requesting that no additional psychological evaluations be performed or that the child be removed from school.
 • The parties have also asked the court to review the current custody and visitation arrangements. Under the current parenting plan, defendant has parenting time with the child in the marital residence from 7 a.m. each morning until Eric leaves from school; from testimony at the hearing, it appears that both parties in fact share part of the morning duties of helping Eric get ready for school. Defendant also has parenting time after school in the marital residence until plaintiff returns from work, and on Tuesdays and Thursdays he has parenting time until the child's bedtime at 8 p. m. The parents alternate weekends of parenting time with exclusive use of the marital premises during that time.
The court heard several days of testimony from a variety of witnesses in October on these matters, and has received a transcript of that testimony and proposed findings and orders from both parents and the attorney for the minor child. In essence, plaintiff has requested the court to adopt a parenting plan recommended by the Family Services Unit, which is virtually identical to the recommendations of the psychologist who performed court-ordered evaluations of the parties. That plan would give joint legal custody with primary residence to the mother; would eliminate the father's morning school preparation for the child; reduce the father's current parenting time after school to once a week until 7 p. m or two days a week on those weeks when he does not have weekend visitation; allow the mother to put the child in day care after school on the days she has after-school custody; and continue the arrangement of alternating weekends. The defendant-father has requested to continue exclusive parenting time in the mornings before school and after school at defendant's residence until the plaintiff returns from work; exclusive overnight parenting twice weekly during the school week; and exclusive parenting time on school holidays and alternating weekends. The attorney for the minor child has CT Page 15032 proposed that the court order no significant change in the current parenting arrangements until a decision by the regional family trial judge.
The court heard testimony from both parties, from the minor child's pediatrician, from the child's school principal, from the clinical psychologist who performed court-ordered evaluations of the parties and the minor child, and from a rabbi on religious matters of significance to the father. Each parent, in effect, accuses the other of being an inadequate parent.
The father testified and claims that the plaintiff keeps the house slovenly and insufficiently clean or dust free so as to jeopardize the child's asthmatic condition; that the mother drinks alcohol frequently and acts bizarrely; that she has placed the minor child's life and safety in danger; that she has exposed her naked body to the child, urinated on the floor, and kissed the child inappropriately; and that she exhibits insufficient concern and awareness for the minor child's health problems and consequently sometimes neglects his medical needs.
The mother claims that she is capable of proper parenting; that the father's parenting time should be reduced because the father is excessively attached to the minor child and so attentive to the child's needs that the child is not developing sufficient independence, individuality, self-sufficiency or social relationships with peers; that the defendant has exhibited behavior that is consistent with planning to take the minor child and leave the country; and that any dirt in the marital household is the responsibility and fault of both parties.
After testimony and argument, the court makes the following findings of fact that the court believes are relevant and necessary to the court's orders herein:
 1. From the testimony offered, it appears that both parents are capable of being adequate parents for the minor child and that neither parent has a severe mental disorder.
 2. Without independent corroborating evidence, the court does not credit Mr. Jones testimony as to the plaintiff's alcoholism or alleged sexual improprieties. The parties show such strong desire to prevail in this action that the court believes such claims would have been presented to the court earlier if they were true. CT Page 15033
 3. The testimony from defendant about plaintiff taking the minor child into a board that went onto the water without the child wearing a proper life jacket is of concern to the court, and is one of the reasons that the court orders her not to take the child out of state.
 4. There is evidence suggesting that plaintiff may at one time, or even now, contemplate taking the minor child to another country permanently. The court does not find persuasive the testimony of the defendant explaining the notes with references to traveling to Israel or his contacts with an immigration attorney. However, defendant has already had ample opportunity to do so and has not sought to escape the court's jurisdiction. The court's concern about this possibility, however, coupled with the defendant's taking the minor child this year to Florida and Israel without knowledge or permission of the mother, are the reasons the court orders him not to take the child out of state.
 5. The court accepts and believes the testimony of Dr. Anne Phillips, the clinical psychologist who performed the court-ordered psychological evaluations, that the minor child, Eric, needs more independence and separation from his father in order for the child to develop his own sense of self-sufficiency and develop more contacts and better relationships with his peers. The court also finds the testimony of the school principal, David Adamson, to be persuasive on the need of the minor child to develop better social interactions skills with his peers. The court found Mr. Adamson to be unbiased and concerned only with the welfare of the child.
 6. While counsel for the minor child urges that a major change in the current parenting plan would not be appropriate since trial is so near, the court accepts and credits the testimony of Dr. Phillips that delay in implementing her recommendations might harm the child. Since trial will be held soon, the court, however, will limit its modification of the current arrangement as set forth below. The court will ask the Family Services Unit for an updated assessment from Dr. Phillips on the effects of the changes ordered herein for consideration by the regional family trial judge. CT Page 15034
 7. Since the father now has his own residence, he may take his exclusive parenting time in his own residence.
 8. The court grants plaintiff's motion for exclusive use pendite lite of the marital premises, except for those afternoons when defendant-father has exclusive parenting time, on which occasions father may take his exclusive parenting time either at the marital residence or his own residence.
 9. Plaintiff mother will have exclusive parenting time in the mornings and after school two days a week, on Mondays and Wednesdays. On those school days she has exclusive parenting time, she may place the minor child in after school day dare until she returns home from work.
 10. Defendant father will have exclusive parenting time either at his own residence or at the marital residence on Tuesdays, Thursdays, and Fridays. On school days when none of the parenting time occurs at the marital residence, he must return the child to the marital home by 7:00 p. m. and having been fed dinner. On days when father uses the marital residence for exclusive parenting time, he must leave the premises within 15 minutes after the plaintiff-mother arrives home from work, and mother will be responsible for preparing dinner for the child on those days. Father must give mother five days notice as to days when he intends to use the marital residence for after-school parenting time. On Tuesdays the defendant will have overnight parenting time and will ensure that the child gets to school on time the next day. The parents may by written agreement vary the days of the school week when either has exclusive after-school parenting time so long as all other aspects of the court's orders regarding after-school parenting time are observed.
 11. Parents shall have exclusive parenting time in their own homes on alternate weekends beginning at Saturday at 9 a.m., as follows: Minor child with father for weekends beginning December 3rd, December 17th, etc.; minor child with mother for weekends of November 23rd, December 10th, etc. The parents may, by agreement, modify this schedule, but upon doing so must notify the court in writing with the signatures of both parents. On weekends when father CT Page 15035 has exclusive parenting time, he shall return the child to the marital residence by 7 p. m. on Sunday.
 12. Defendant father will have exclusive parenting time on Thanksgiving day 1999 from 8 a.m. until the next day at 7:00 p. m.
 13. Defendant father may choose two days upon which he will have exclusive parenting time to celebrate Hanukkah with Eric and notify mother ten days in advance, except that neither of these days may be Christmas eve, Christmas Day, or any of the days that defendant mother has exclusive parenting time during Christmas vacation.
 14. Defendant mother to have exclusive parenting time during the first half of Christmas vacation, from Friday December 24th until 8:00 a.m. Wednesday December 29th; defendant father to have exclusive parenting time during the second half of Christmas vacation, from 8:00 a.m. on Wednesday, December 29th through Sunday, January 2nd at 6:00 p. m, at which time he will returned to the marital residence.
 15. For school holidays in the year 2000, parents will alternate having exclusive parenting time on those days. On such days that father has exclusive parenting time, it may occur at his residence and include overnight visitation on the day of the holiday. Father will be responsible for seeing that child gets to school on time the next day. Mother will have first school holiday, father the second, etc. The parents may alter this schedule by written consent.
 16. Neither parent may take the child out of state without further order of the court.
 17. The court grants the motion for order pendite lite filed September 14, 1999, by the attorney for the minor child as follows: Neither party shall take the child for further psychological or medical treatment or evaluation except as may be approved by the attorney for the minor child. Neither parent shall take the child out of school once the school day has begun for medical or psychological evaluation or treatment without written permission of the attorney for the minor child; without CT Page 15036 such written permission from counsel for the minor child, after the child enters the school each day, any decision as to whether to refer the minor child for medical treatment during the school days shall be the exclusive decision of school authorities. When the child does have an appointment for medical or psychological treatment, whichever parent has exclusive parenting time for the time of the appointment shall be responsible for taking the child to the appointment and for informing the other parent of the appointment in advance, or making satisfactory arrangements for the other parent to take the child. Either parent may attend appointments or evaluations. The child's pediatrician, Dr. Kavile, testified that the father was appropriate in his seeking of medical treatment for the child. But the court questions that conclusion because there was testimony that the father removed the child for school on September 3rd for what he told the school was an emergency, when in fact the testimony established that this was not a medical emergency and was scheduled during the school day because that was the only time Dr. Kavile had available for an appointment that day. Thus the court believes the attorney for the minor child should make the decision as to when and what medical treatments the child should undergo. Either parent, however, may take the child to a hospital emergency room or for other emergency medical care that may be necessary, but should notify the other parent and the attorney for the minor child immediately and should also inform any medical provider that only the attorney for the minor child has legal authority to authorize medical treatment other than treatment necessary to save the child's life or to prevent serious or irremediable medical harm. The court accepts the testimony of Dr. Phillips that more psychological assessments would be deleterious to the minor child.
 18. The defendant's motion for return of personal property dated September 30, 1999, is granted, with the following limitations: (a) Any property or papers that plaintiff has already introduced into evidence may be left in custody of the court. (b) Plaintiff's attorney may keep originals of any property or papers that plaintiff intends to seek to introduce into evidence at trial unless and until defendant signs a written consent not to object at trial to secondary evidence (for example, CT Page 15037 photographs or photocopy). If defendant signs such a written consent, plaintiff shall return any originals in plaintiff's possession to defendant. (c) Whichever parent has possession of the passport of the minor child must surrender such immediately to the attorney for the minor child (unless this has already been done).
 19. Defendant's motion for contempt dated September 30, 1999, is denied. Both parents were charged with periods of exclusive time in the marital residence under previous parenting plans. Therefore the court cannot attribute fault for any uncleanliness or dust in the home to either of the parties.
 20. These orders are effective as of 8 A.M. E.S.T., Thursday, November 25, 1999.
SO ORDERED
BY THE COURT
Stephen F. Frazzini, Judge of the Superior Court